Compton James **RICHARDS**, Appellant,

v.

**IMMIGRATION AND NATURALIZATION SERVICE et al.**

No. 75–1420.

United States Court of Appeals, District of Columbia Circuit.

Argued March 4, 1976.

Decided March 18, 1977.

A. Palmer Ifill, Washington, D.C., for appellant.

Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D.C., for appellees.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

Opinion for the Court filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

With exceptions not relevant here, Section 248 of the Immigration and Nationality Act empowers the Attorney General to authorize changes in nonimmigrant classifications of aliens lawfully admitted to, and lawfully continuing in, the United States as nonimmigrants.[1] That function has largely been delegated to the Commissioner of Immigration and Naturalization.[2] In this case, the Immigration and Naturalization Service (INS) denied appellant's application for a change from visitor- to student-status, and the District Court by summary judgment sustained that action.[3] In the circumstances shown, we affirm.

I

Appellant is a native and adult citizen of Guyana. From the American embassy in that country he obtained a visa valid until March 23, 1974,[4] and on January 13 of that year came to the United States as a visitor for pleasure. Just prior to entry, appellant was given an INS Arrival-Departure Record, Form I-94, in which was inserted "Jan. 31, 1974" as the date to which he might stay.[5]

---

1. "The Attorney General may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status, except an alien classified as a nonimmigrant under paragraph (15)(D) of section 1101(a) of this title, or an alien classified as a nonimmigrant under paragraph (15)(C) or (J) of section 1101(a) of this title unless he applies to have his classification changed from a classification under paragraph (15)(C) or (J) to a classification under paragraph (15)(A) or (G) of section 1101(a) of this title." Act of June 27, 1952, ch. 477, tit. II, ch. 5, § 248, 66 Stat. 218, as amended, 8 U.S.C. § 1258 (1970).

2. 8 C.F.R. § 2.1 (1975).

3. *Richards v. INS,* Civ.No. 74–1840 (D.D.C. Mar. 10, 1975) (unreported), Record on Appeal 4.

4. Appellant's passport and visa do not appear in the record but throughout the proceedings, both administrative and judicial, that date has been accepted by both sides.

5. An application to enter the United States must be made in person to an immigration officer at the port of entry. 8 C.F.R. § 235.1(a) (1975). An alien must then present whatever documents are required and establish, to the satisfaction of the officer, his entitlement to enter. *Id.* § 235.1(d). A visitor for pleasure

Appellant remained in the United States beyond that date, without any effort to obtain an extension of his authorized stay.[6] In March, 1974, he applied for admission to Federal City College and was accepted for a four-year course of study to commence the following September 30. He then applied to INS for a change of his status from visitor to student.

The District Director denied the application.[7] His written decision informed appellant "that you last arrived in the United States as a visitor on January 13, 1974 with an authorized admission period to January 31, 1974";[8] that "[y]ou failed to submit an application to extend your stay in this country beyond January 31, 1974";[9] and that "[t]his instant application for change of nonimmigrant classification to a student to attend Federal City College was submitted to this office on March 27, 1974, some two months past your authorized admission period."[10] The decision acknowledged that Section 248 permits "a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant who is continuing

to maintain that status,"[11] but explained that "[i]nasmuch as you have failed to submit an application to extend your temporary period of stay in this country you are statutorily ineligible for change of your nonimmigrant status to a student."[12] The decision declared that INS "could not effect a change of classification in your particular case when you would not be enrolling in school until September of 1974,"[13] and suggested that "[i]t would be to your advantage to return to Guyana and make application for the proper nonimmigrant visa there and return to the United States in the fall of 1974 to commence your studies."[14]

Appellant took an appeal to the Regional Commissioner. In an accompanying letter, appellant stated:

The reason why I did not submit an application for an extension of my visitor's visa was because when I obtained my visa at the U.S. Embassy in Guyana, the date of March 23, 1974 was entered on my visa and upon entering the U.S. I mistakenly thought that this was the date to which I could remain in the United States. I did not realise when I en-

\*　\*　\*　\*　\*　\*

---

may be admitted for a maximum initial period of six months, and may be granted extensions in increments of not more than six months. *Id.* § 214.2(b). In practice, however, admission is limited to whatever shorter period is needed to accomplish the purpose of the visit, as determined by an immigration inspector. INS Immigrant Inspector's Handbook 16–23 (Mar. 23, 1973). With exceptions unimportant here, each nonimmigrant alien admitted is issued a Form I-94 endorsed on one side to show several things, including the "period of admission." 8 C.F.R. § 235.1(f) (1975). One copy of the endorsed form is returned to the alien for retention while in the United States and surrendered upon departure. *Id.*

The administrative record in the instant litigation reproduces only the side of appellant's Form I-94 containing the data specified in the regulations. In an unlabeled box on that side is written "Jan. 31, 1974." App. 25. Prior to oral argument, we called for a full copy of the form and INS, explaining that it had destroyed its entire supply of the form in use when appellant was admitted, submitted copies of the current form with the representation that it differs only slightly from the older. On the other side of that form, under the label "Important Notice," appear the following warnings, among others:
　You are permitted to remain in the U.S. for the time indicated.

To remain past this period, without permission from immigration authorities, is a violation of law.
Submissions by Appellee (Feb. 17 & Mar. 2, 1976).

6. Appellant has always insisted that he thought the duration of his stay was to be measured by the visa-expiration date rather than the date specified in the Form I-94.

7. *Compton James Richards,* INS No. A20–615–605 (initial decision May 15, 1974) (unreported), Appendix (App.) 23–24.

8. *Id.,* App. 24.

9. *Id.,* App. 24.

10. *Id.,* App. 24.

11. *Id.,* App. 24.

12. *Id.,* App. 24.

13. *Id.,* App. 24.

14. *Id.,* App. 24.

tered the U.S. that the date of January 31, 1974 written on my form I-94 was the date on which my stay as a visitor was to expire.[15]

The Regional Commissioner noted, however, that the visa expired on March 23, 1974, and that the application for change of status was not filed until four days thereafter.[16] On that ground he held the application untimely and affirmed the District Director's decision.[17] Appellant moved for reconsideration but the Regional Commissioner, expressly finding "that failure to apply timely for an extension of stay was not excusable,"[18] adhered to his earlier view and denied the motion.[19]

Appellant then instituted suit against INS and the District Director in the District Court. His complaint asserted lack of notice that he would become out-of-status on January 31, 1974, and charged that the administrative disposition of his application was arbitrary. INS moved for summary judgment on the administrative record and the court granted the motion.[20] This appeal followed.

## II

Section 248 permits a change from one nonimmigrant classification to another only "in the case of [an] alien lawfully admitted to the United States as a nonimmigrant *who is continuing to maintain that status*,"[21] and then only "under such conditions as" the Attorney General "may prescribe."[22] Upon appellant's arrival in the United States, his stay was limited to January 31, 1974, as was so indicated on his Form I-94,[23] and at no time did he seek an enlargement of the period within which he might legally remain. On that basis, the conclusion has consistently been reached administratively that his status as a nonimmigrant alien lawfully in the United States terminated on that date.[24]

■ INS has promulgated a regulation[25] in part providing:

In determining whether an applicant has continued to maintain his nonimmigrant status, the district director shall consider whether the alien has remained in the United States for a longer period than that authorized by [INS], and shall consider any conduct by the applicant relating to his maintenance of the status from which the applicant is seeking a change. An applicant may not be considered as having maintained his nonimmigrant status within the meaning of this section if

15. App. 22.

16. *Compton James Richards,* INS No. A20–615–605 (decision on appeal July 15, 1974) (unreported), App. 19–20.

17. *Id.,* App. 20. See also note 18 *infra.*

18. *Compton James Richards,* INS No. A20–615–605 (decision on rehearing Oct. 17, 1974) (unreported), App. 9.

19. *Id.,* App. 9–10. In his original decision, the Regional Commissioner had "also found [it] to be likely that the applicant would have to accept employment in the United States in order to meet his expenses." *Compton James Richards* (decision on appeal), *supra* note 16, App. 20, a matter on which various data—some by affidavit—were submitted. App. 13–15, 17, 18, 19, 24, 28. On rehearing, however, the Regional Commissioner substituted for the earlier finding his conclusion that "[a]s to the sufficiency of affidavits of support issued in Guyana for providing adequate funds for the applicant to study in the United States without resorting to working here, the Consul in Guyana when considering an application for a student visa is best able to evaluate them." *Compton James Richards* (decision on rehearing), *supra* note 18, App. 9. No issue respecting support has been raised in the District Court or here.

20. *Richards v. INS, supra* note 2.

21. See note 1 *supra* (emphasis supplied).

22. See note 1 *supra.*

23. See note 5 *supra* and accompanying text.

24. *Compton James Richards* (initial decision), *supra* note 7, App. 24; *Compton James Richards* (decision on appeal), *supra* note 16, App. 19; *Compton James Richards* (decision on rehearing), *supra* note 18, App. 9–10.

25. The Commissioner of Immigration and Naturalization is empowered to issue regulations necessary or appropriate for the exercise of authority delegated to him by the Attorney General. 8 C.F.R. § 2.1 (1975). See note 2 *supra.*

he failed to submit his application for change of nonimmigrant classification before his authorized temporary stay in the United States had expired, unless the district director in his discretion is satisfied that the failure to file a timely application was excusable, that the alien has not otherwise violated his nonimmigrant status and is a bona fide nonimmigrant, and the alien is not the subject of deportation proceedings under Part 242 of this chapter.[26]

Since appellant does not challenge, nor do we doubt, the propriety of this regulation as an exercise of the Attorney General's statutory power to set conditions on changes in status,[27] the question becomes whether the administrative treatment of appellant's application was erroneous in its refusal to consider its untimeliness excusable. That question, like any other pertaining to merit of the administrative decision, is to be determined exclusively on the administrative record.[28]

■ The Regional Commissioner, we remind, expressly held that appellant's "failure to apply timely for an extension of stay was not excusable."[29] That necessarily meant that the tardiness of appellant's change-of-status application, in lieu of an extension-of-stay application, was no more pardonable. It is clear that these conclusions must stand unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[30] It is equally clear that appellant's argument—that he believed that by reason of his March 23, 1974, visa-expiration date, he was entitled to stay in the United States until then—does not survive that standard. Indulging appellant the benefit of every doubt in that regard, the fact remains that appellant did nothing to maintain the legality of his sojourn in the United States until he filed his application for change of status four days after March 23, 1974, had come and gone.[31] Given this delinquency, thrice assigned as ground for administrative denial of the application,[32] we cannot say that the Regional Commissioner's indisposition to excuse appellant's unpunctuality contravened either reason or law.[33]

■ We think, however, that INS would be well advised to restructure its procedures to afford arriving aliens plainer notice that the period of authorized stay stated in the Form I-94 supersedes any later date that may be designated in the alien's visa.[34] It so happens that uncertainty in that respect could not affect the outcome here;[35] we caution, however, without deciding, that in other instances conceivably it might. Our decision today is limited, of course, to the facts of the case before us.

26. 8 C.F.R. § 248.1(b) (1975).

27. See notes 2, 25 *supra*.

28. *Doraiswamy v. Secretary of Labor*, 180 U.S. App.D.C. ——, at —— ——, 555 F.2d 832 (1976), and authorities there cited. Consequently, we must reject appellant's contention that summary judgment became improper by reason of issues of material fact which he tendered for trial.

29. See text *supra* at notes 17–18.

30. Administrative Procedure Act, § 10(e)(2)(A), 5 U.S.C. § 706(2)(A) (1970); *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106, 111 (1973); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 153 (1971); *Pesikoff v. Secretary of Labor*, 163 U.S.App.D.C. 197, 201 n. 5, 501 F.2d 757, 761 n. 5, *cert. denied*, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974).

31. While it was not until March 25, 1974, that Federal City College issued a certificate of academic eligibility to support appellant's application for change of status, the record yields no reason why appellant could not have sought an extension of his authorized stay in the United States long before March 23, 1974, when—as he well knew—his visa would expire.

32. *Compton James Richards* (initial decision), *supra* note 7, App. 24; *Compton James Richards* (decision on appeal), *supra* note 16, App. 19–20; *Compton James Richards* (decision on rehearing), *supra* note 18, App. 9–10.

33. In this view, we do not reach the question whether under the circumstances appellant lost his status as a nonimmigrant alien lawfully in the United States on January 31, 1974. See text *infra* at notes 34–35.

34. See note 4 *supra*.

35. See note 33 *supra* and accompanying text.

It is not to be taken as precedent for a situation wherein the ambiguity plays a major role in belated submission of a change-of-status application.

The judgment appealed from is

*Affirmed.*