Jose TAVARES, Plaintiff,

v.

John ASHCROFT, et al., Defendants

No. CIV.03–1873 (JP).

United States District Court,
D. Puerto Rico.

May 23, 2005.

José R. Gaztambide–Añeses, Esq., San Juan, PR, for Plaintiff.

Rebecca Vargas–Vera, Esq., United States Attorney's Office, San Juan, PR, for Defendant.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Respondents' "Motion to Dismiss" (docket No. 4) and Petitioner's response thereto (docket No. 8). Petitioner José Tavares, a resident alien of Cape Verdean nationality, has filed a Writ of Habeas Corpus alleging that his order of deportation should be stayed be-

cause of several alleged violations of his due process rights by the immigration judge that presided over his case. Respondents argue that the immigration judge did not violate Petitioner's rights, and that the Writ should be dismissed with prejudice. For the reasons stated below, the Court hereby GRANTS Defendant's "Motion to Dismiss."

## II. LEGAL STANDARD FOR A MOTION TO DISMISS

According to the Supreme Court, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema, N. A.*, 534 U.S. 506, at 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Moreover, according to the First Circuit, the Court must "treat all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 997 (1st Cir.1992). In addition, a "complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations." *González–Pérez v. Hospital Interamericano De Medicina Avanzada*, 355 F.3d 1, at 5 (1st Cir.2004). Finally, under Federal Rule of Civil Procedure 8(f), "[a]ll pleadings shall be so construed as to do substantial justice."

## III. FACTUAL BACKGROUND

On August 15, 2003, Petitioner José Tavares filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241, a complaint for declaratory and injunctive relief, and a motion for an emergency stay of deportation. Petitioner, a citizen of Cape Verde who entered the United States through Boston, Massachusetts, on October 19, 1974, at the age of 16, was initially admitted as an immigrant, P2–2 (son of a United States resident). He was placed in deportation proceedings in 1991 as a result of criminal convictions in 1988 for assault and 1990 for possession of a controlled substance. At a deportation hearing on March 17, 1994, proceedings were terminated when an immigration judge ("IJ") granted him a § 212(c) waiver of deportability. After a subsequent conviction for possession of a controlled substance (cocaine) in July of 1995, deportation proceedings were again initiated. Petitioner appeared at a November 6, 2001 hearing before an IJ with his attorney, Anna Vásquez, Esq., and once again sought a § 212(c) waiver of deportability. The case was continued for attorney preparation. At a subsequent hearing, the case was scheduled for hearing on the merits of the § 212(c) application, to be held on September 9, 2002.

Petitioner appeared at the September 9, 2002, hearing, but Attorney Vásquez did not. The IJ attempted to contact Attorney Vásquez, but was unsuccessful. The IJ continued the case for one week, until September 16, warning that the case would go forward on that date whether or not Petitioner appeared with an attorney. Petitioner appeared at the September 16 hearing with a new attorney, José Gatzambide, Esq. Attorney Gatzambide requested a continuance in order to prepare for the § 212(c) hearing. The IJ granted the continuance, scheduling a hearing for November 13, 2002. The hearing was held, and the IJ issued a ruling denying Petitioner's request for relief from removal under § 212(c) and ordering Petitioner's removal to Cape Verde, citing the lack of documentation provided in support of the application. Petitioner Tavares then filed an appeal, which was denied by the Board of

Immigration Appeals ("BIA") on May 30, 2003. Petitioner Tavares filed the instant action on August 15, 2003.

## IV. CONCLUSIONS OF LAW

### A. The Attorney General and DHS Secretary as Respondents

█ Respondents in this matter argue that Attorney General John Ashcroft and Secretary of the Department of Homeland Security, Tom Ridge, are not proper respondents in this case. The Court agrees. In *Vázquez v. Reno*, 233 F.3d 688 (1st Cir.2000), the First Circuit ruled that an alien seeking a writ of habeas corpus contesting legality of his detention by the INS was required to name as the respondent the individual having day-to-day control over the facility in which he was being detained, and not the Attorney General, absent extraordinary circumstances. *See also* 28 U.S.C.A. § 2243. The proper respondent in this action is David Randler, Deputy Field Office Director of the Bureau of Immigration and Customs Enforcement, who is also a named respondent in this action. Pursuant thereto, the Court hereby **DISMISSES WITH PREJUDICE** all claims against Respondents John Ashcroft and Tom Ridge.

### B. Habeas Jurisdiction

Respondents also argue that Petitioner's claims are outside the scope of habeas jurisdiction, inasmuch as Petitioner is asking for a review of the facts and evidence presented in his case by the reviewing court rather than asserting an issue of law that would warrant habeas review. The Court agrees in part with Respondents.

█ In *St. Fort v. Ashcroft*, 329 F.3d 191 (1st Cir.2003), the First Circuit explained the scope of habeas review:

The scope of habeas review is not the same as the scope of statutory judicial review in the courts of appeal. *Heikkila v. Barber*, 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953). At a minimum, habeas review encompasses constitutional claims that are at least colorable. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954). This includes an assessment of whether a particular set of facts amounts to a constitutional violation. *E.g., Zadvydas v. Davis*, 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Habeas also encompasses colorable claims that an alien's statutory rights have been violated. *Id.* at 688, 121 S.Ct. 2491, 150 L.Ed.2d 653; *Carranza v. INS*, 277 F.3d 65, 71 (2002). Included in this category are issues of the proper construction of a statute, which is an issue of law. *Goncalves*, 144 F.3d at 124–25. As a result, if a statute makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to even consider him. But he may not challenge the agency's decision to exercise or not exercise its discretion to grant relief. *Carranza*, 277 F.3d at 71 (*citing Goncalves*, 144 F.3d at 125). We have also said generally that "pure issue[s] of law" may be raised in habeas. *Goncalves*, 144 F.3d at 113; *see also Ruckbi v. INS*, 285 F.3d 120, 124 n. 6 (1st Cir.2002); *Carranza*, 277 F.3d at 72. The entire content of that phrase has not been worked out. In *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court referred to the use of habeas to correct "errors of law, including the erroneous application ... of statutes." 533 U.S. at 302, 121 S.Ct. 2271, 150 L.Ed.2d 347. *St. Fort*, 329 F.3d at 203.

█ Respondents essentially argue that since the decision in the present case was a discretionary one made under § 212(c) of

the Immigration and Nationality Act ("INA") in an effort by Petitioner Tavares to obtain relief from deportation, the Court therefore has no habeas jurisdiction to review that decision because, according to the *St. Fort* ruling, an alien may not challenge an agency's decision to exercise or not exercise its discretion to grant relief; he may only challenge the refusal of the agency to consider him for that relief. As Respondents put it, Petitioner's claims are outside the scope of habeas jurisdiction, inasmuch as Petitioner is asking for a review of the facts and evidence presented in his case by the reviewing court rather than asserting an issue of law that would warrant habeas review. The Court agrees with Respondents. Because the type of claims that are available to aliens on habeas are restricted, this Court's jurisdiction in this case is limited solely to the aspects of Petitioner's claims which can be considered "questions of pure law." [1] *Carranza,* 277 F.3d at 73. Because what constitutes a "question of pure law" is still an unsettled area of the law, the Court will examine all of Petitioner's claims of due process violations, even though it would appear that only Petitioner's claim that the IJ violated his due process rights by applying the incorrect legal standard in ruling on his § 212(c) petition would seem to be the only one that can undoubtedly be termed a pure question of law.

## C. Petitioner's Due Process Claims

Petitioner's writ of habeas corpus essentially argues that Petitioner's constitutional due process rights were violated in three ways: 1) that the IJ and BIA's refusal to grant Petitioner's motion to continue the deportation hearing; 2) that the IJ "essentially prejudged" Petitioner's

case; and 3) that the IJ committed reversible errors of law in denying the § 212(c) petition. The Court addresses these arguments in order.

## 1. The Immigration Judge's Denial of a Continuance

■ Petitioner claims that the IJ's denial of his November 14, 2002, request for a continuance violated his due process rights in that the IJ abused her discretion when it did not provide a meaningful continuance for Petitioner's new counsel to adequately prepare for the § 212(c) hearing. Respondents argue that Petitioner did receive a meaningful continuance in that a continuance was granted from September 16, 2002 to November 13, 2002, and then had an extra month when the IJ, due to time constraints, ended the November 14 hearing early and did not reconvene the proceedings until December 12, 2002. The Court agrees with Respondents that Petitioner was given ample time to prepare by the IJ.

■ We begin our analysis of this argument by stating the following well-established fact: "An immigration judge, like other judicial officers, possesses broad (though not uncabined) discretion over the conduct of trial proceedings." *Aguilar–Solís v. INS,* 168 F.3d 565, 568 (1st Cir. 1999). Because deportation is a civil proceeding, rather than a criminal one, the Sixth Amendment does not create a right to government-provided counsel for prospective deportees. *Nelson v. I.N.S.,* 232 F.3d 258 (1st Cir.2000), citing *INS v. Ló-pez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). However, an alien is afforded the right to counsel at his

---

**1.** Purely legal questions are suitable for habeas review because answering them does not necessitate second-guessing "the agency's factual findings or the Attorney General's exercise of her discretion." *Henderson v. INS,* 157 F.3d 106, 120 n. 10 (2d Cir.1998) (*citing Goncalves,* 144 F.3d at 125).

own expense. *Id., citing Ríos–Berríos v. INS,* 776 F.2d 859, 862 (9th Cir.1985). "The question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case." *Baires v. I.N.S.,* 856 F.2d 89 at 91 (9th Cir.1988), *citing Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). The *Baires* court identified three factors to consider in determining whether an immigration judge abused his or her discretion in denying a continuance: 1) the inconvenience to the Immigration Court; 2) whether the need for a continuance is based on the alien's unreasonable conduct; and 3) the number of prior continuances granted the alien and their duration. *Baires,* 856 F.2d at 92, 93.

On November 6, 2001, Petitioner Tavares appeared at a hearing before the IJ with his attorney, Anna Vásquez, Esq., and sought a § 212(c) waiver of deportability. The case was then continued for attorney preparation. At a subsequent hearing, the case was scheduled for hearing on the merits of the § 212(c) application, to be held on September 9, 2002.

Petitioner appeared at the September 9, 2002, hearing, but Attorney Vásquez did not. The IJ attempted to contact Attorney Vásquez, but was unsuccessful. The IJ continued the case for one week, until September 16, warning that the case would go forward on that date whether or not Tavares appeared with an attorney. Petitioner appeared at the September 16 hearing with his new attorney, José Gatzambide. Attorney Gatzambide requested a continuance in order to prepare for the § 212(c) hearing. The IJ granted the continuance, scheduling a hearing for November 13, 2002.

As is plain to see from the facts above, Petitioner was granted several continuances, from November 6, 2001, to September 9, 2002, then from September 9, 2002, to September 16, 2002, and upon the appearance of Petitioner's new counsel, it was once again continued for two months, from September 16, 2002 to November 13, 2002.

Moreover, it is clear from the record that the November 13, 2002 hearing date was agreed upon because to set it for another date would have inconvenienced the Court. As the Immigration Judge put it, "My calendar is packed. I'll just have to schedule this case for a detainee date, that's the only thing I can do. Because this case is so old I cannot reschedule it, you know, for next year. I just have to see this case as soon as possible." *Transcript September 16, 2002,* at 51. The IJ then consulted with Petitioner's counsel in setting the November 13, 2002 date, which was agreed upon during the following exchange:

IJ: You said you're going to be on vacation from when to when?

Gatzambide: I'll be back October 12th.

IJ: And you're leaving when?

Gatzambide: September 27. I think that's a Friday, Your Honor. If that's a Friday, that's for sure I'm leaving.

IJ: Would November, November 13, would that be okay for you? This is a Wednesday. I have to put him a detainee-

Gatzambide: Your Honor, if you say November 13, regardless of what I could have in my calendar-

IJ: That would be okay?

Gatzambide:—I'll be here. *Id.*

At the November hearing (which was held on November 14, 2002), Attorney Gatzambide requested another continuance, which the IJ denied. Petitioner Tavares

proceeded to give his testimony on that date. Because of time constraints, the IJ stopped Petitioner's testimony, and consulted with Petitioner's counsel on a date for continuing, finally arriving at December 12, 2002. *Transcript November 14, 2002,* at 143–144. Proceedings were reconvened on December 12, 2002. Even though Petitioner's request for a continuance was denied, the postponement of the case from November 14 to December 12 gave Petitioner yet another month to prepare for the proceedings.

Although the Court understands Petitioner's contention that § 212(c) rulings are premised on fact-intensive determinations necessitating the marshaling of considerable amounts of evidence, the Court finds that the two-month period from September to November of 2002 that Attorney Gatzambide had to familiarize himself with and prepare for the case was sufficient to protect Petitioner's due process rights, especially given the fact that Petitioner was in effect granted a third month to prepare when the IJ stopped the hearing and didn't reconvene it until December 12, 2002. It appears to this Court that the IJ showed sufficient flexibility in the handling of Petitioner's case in light of the circumstances, and as such the Court can find nothing to indicate that the IJ abused her discretion in denying Petitioner's November 14, 2002 request for a continuance of the § 212(c) hearing. Therefore, Petitioner's claims that his due process rights were violated by the IJ abusing her discretion in not granting him a meaningful continuance are hereby **DISMISSED WITH PREJUDICE.**

### 2. The Immigration Judge's Alleged "Prejudgment" of Petitioner's Case

██ Petitioner Tavares also alleges that the immigration judge's comments regarding Petitioner's burden of persuasion indicated bias on the part of the IJ, effectively resulting in a "prejudgment" of Petitioner's case. In making this claim, Petitioner relies on comments the IJ made from the bench during the various hearings in this case. For example, at the November 11 hearing, the IJ explained to Petitioner that "Already you were given one 212(c) back in 1994. And now you are asking for another 212(c). I want you to know that you have a very heavy burden, okay?" *Transcript November 14, 2002,* at 77. However, the IJ did not leave it at that. Immediately thereafter, she went on to say that "When a person has a criminal record, a person has to establish outstanding equities. This is a case, *Matter of Marin,* which is a case that is controlling in this case. It's very important, okay that you try to convince the Court that you really deserve a break of remaining in the United States as a permanent resident, okay?" *Id.* Indeed, in *Matter of Marin,* 16 I. & N. Dec. 581, 1978 WL 36472(BIA) (1978), the Board of Immigration Appeals held that

(2) A statutorily eligible applicant who has the right to apply for relief under section 212(c) must be given the reasonable opportunity to come forward with favorable considerations which may offset the adverse matters of record.

(3) The equities that an applicant for relief under section 212(c) must bring forward to establish that favorable discretionary action is warranted will depend in each case on the nature and circumstances of the ground of exclusion sought waived and on the presence of any additional adverse factors (factors previously deemed favorable and unfavorable set forth).

(4) An applicant for discretionary relief under section 212(c) who has been convicted of a serious drug offense must demonstrate "unusual" or "outstanding"

countervailing equities before a favorable exercise of discretion will be considered.

(5) An applicant for relief under section 212(c) who has a criminal record will ordinarily be required to make a showing of rehabilitation before relief will be granted as a matter of discretion. *Matter of Marin*, 16 I. & N. Dec. at 581.

The IJ's comments about the *Marin* standard do not incorrectly state its holding, and the Court cannot find any indication in the record that the IJ invented some higher pleading standard based on a misreading of that ruling. She was merely repeating what that case states very plainly in its holding: "As the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities." *Id.* at 585. The *Marin* standard is essentially a balancing test, and common sense dictates that criminal acts committed by a seeker of § 212(c) relief must demonstrate countervailing equities sufficient to balance out his or her misdeeds. *Id.* at 585 ("Upon review of the record as a whole, the immigration judge is required to balance the positive and adverse matters to determine whether discretion should be favorably exercised.").

The Court concludes that the IJ's comments were made in an effort to indicate to Petitioner and his counsel that Petitioner's burden for demonstrating countervailing equities was necessarily somewhat higher because of his criminal record. The Court can find no evidence that would convince it that the IJ was doing anything other than trying to explain to Petitioner Tavares in the simplest possible way what was expected of him. It is clear to the Court that the IJ was not expressing bias or prejudice towards the Petitioner, and was instead helping him to better understand what he

had to prove to the Court in order to receive the relief from deportation that he requested. Therefore, Petitioner's claims that his due process rights were violated by the IJ demonstrating bias by "prejudging" his case are hereby **DISMISSED WITH PREJUDICE**.

### 3. Reversible Error in Ruling on § 212(c) Petition

Petitioner's third claim is that the IJ committed several legal errors in evaluating his § 212(c) petition, namely that she ignored evidence of his rehabilitation, that she discounted his family relationships, that she erroneously relied on a 26 year-old warrant that did not result in a conviction, and that she ignored the hardship that would befall his family if he was deported. It is Petitioner's contention that these alleged legal errors were so grave that they constituted a violation of Petitioner's due process rights. Respondents contends that the IJ did not commit any legal errors in her ruling on Petitioner's § 212(c) petition, and that, pursuant thereto, Petitioner's claims in this matter should be dismissed. The Court agrees.

As this Court stated above, if a statute makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to even consider him. But he may not challenge the agency's decision to exercise or not exercise its discretion to grant relief. *St. Fort*, 329 F.3d at 203, *citing Carranza*, 277 F.3d at 71. We also noted that generally "pure issue[s] of law" may be raised in habeas. *Id., citing Goncalves*, 144 F.3d at 113; *see also Ruckbi v. INS*, 285 F.3d 120, 124 n. 6 (1st Cir.2002); *Carranza*, 277 F.3d at 72.

 Pursuant thereto, our analysis here is constrained to encompass only pure issues of law. We therefore restrict our analysis here to the issue of whether the

Immigration Judge applied the appropriate legal standard in ruling on Petitioner's § 212(c) petition.

In *Marin*, the BIA held that Section § 212(c) "does not ... provide an indiscriminate waiver for all who demonstrate statutory eligibility for such relief. Instead, the Attorney General or his delegate is required to determine as a matter of discretion whether an applicant warrants the relief sought. The alien bears the burden of demonstrating that his application merits favorable consideration." *Marin*, 16 I. & N. Dec. at 582–583. The Board then expounded upon the factors to be taken into consideration in ruling on a § 212(c) petition:

[E]ach case must be judged on its own merits. The immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country.

In order to provide the framework for an equitable application of discretionary relief, the Board has enunciated factors relevant to the issue of whether section 212(c) relief should be granted as a matter of discretion. Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country. *See, e.g., Matter of Carrasco,* Interim Decision 2579 (BIA 1977), aff'd on other grounds, *Carrasco–Favela v.*

*INS*, 563 F.2d 1220 (5th Cir.1977); *Matter of Edwards*, 10 I. & N. Dec. 506 (BIA 1963, 1964); (further citations omitted).

Although in an individual case, one or more of these adverse factors may ultimately be determinative of whether section 212(c) relief is in fact granted, their presence does not preclude a respondent from presenting evidence in support of a favorable exercise of discretion. *See Vissian v. INS*, 548 F.2d 325, 330 (10th Cir.1977). Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives). *See Matter of Edwards; Matter of G—A—,* 7 I. & N. Dec. 274 (BIA 1956); *Matter of F—,* 6 I. & N. Dec. 537 (BIA 1955); (further citations omitted). *Marin,* 16 I. & N. Dec. at 584–585.

It is clear to the Court that the IJ took into account the evidence presented to her, as is surmisable from her ruling on the § 212(c) petition. As the IJ put it, "The Court has to balance positive and negative factors. The negative factors far and away and beyond [sic] outweigh the positive factors in this case. The respondent's extensive criminal record outweighs basically any positive factor that could exist in this case." *Transcript of the Oral Deci-*

*sion of the Immigration Judge* at 29. The IJ continues to explain how she reached her decision not to exercise her discretion to grant § 212(c) waiver of deportation, citing to the dearth of evidence regarding Petitioner's relationship with his son and daughter, his lack of ownership of any real or business property, and what hardship, if any, he would suffer if deported. *Id.* at 29–31. Based upon the evidence presented to her, the IJ held that Petitioner Tavares "has not established that he deserves a second 212(c)." *Id.* at 31.

The Court finds that the immigration judge in this matter applied the correct legal standard to Petitioner's § 212(c) petition. Moreover, the Court can not identify anything that would lead it to believe that the IJ incorrectly applied the controlling *Marin* standard. Therefore, the Court finds that no errors of law were committed by the immigration judge. Pursuant thereto, Petitioner's claims that his due process rights were violated by the immigration judge's alleged errors of law are hereby **DISMISSED WITH PREJUDICE.**

## V. CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** Respondents' Motion to Dismiss (docket No. 4) and **DISMISSES WITH PREJUDICE** Petitioner's Writ of Habeas Corpus. The Order of Deportation the case of Petitioner Jose Tavares is hereby **AFFIRMED.**

**IT IS SO ORDERED.**